We'll move to our fifth case of this morning, Irineo Cuenca Brito v. Garland, Attorney General of the United States, PL No. 21-1278. Thank you. Good morning, Your Honors, and may it please the Court, my name is Daniel Tolman and I Irineo Cuenca Brito in today's argument. Petitioner raises essentially three arguments in his petition for review. The first is that the agency abused its discretion and committed legal error by its handling of the DHS late-filed brief without addressing Petitioner's request for summary dismissal. The second is whether the Board incorrectly reversed IJ's findings in Petitioner's case supplying the de novo standard rather than clear error. And the third is whether the fact that two out of the three Board members on the panel adjudicating the Petitioner's appeal were temporary Board members that were serving beyond their six-month appointment. Mr. Tolman, do you stand by that argument? I don't think you filed a reply brief in this case and it seems like the government cleared that up. Do you stand by that third argument? I do, Your Honor, and I apologize to the Court for not filing a reply brief. There were time constraints that prevented me from doing so. And Your Honor, if it's fine with you, I would like to begin with that argument, actually, because I think that it's probably the more substantive one and probably the more novel one. The government's—well, for one thing, I should point out that in its brief, the government argued that the error had been fixed by this reappointment, but they did not address what the correct remedy would be if this Court should find otherwise. So I would like to begin by pointing out— I think that's wrong. I don't think they agreed that there was an error that was fixed. I think they argued that your argument is factually wrong. Correct, Your Honor. What I was referring to is that if this Court finds otherwise that the argument is correct, what I said should be done about it, that the decision should be deemed void of an issue— Well, why don't you start out with why it was incorrect? Thank you, Your Honor. As I said, the respondent's brief refers to the reappointment of the two judges in question, but the documents that they attached clearly refer to renewal of the terms. So as we pointed out in our brief, the provision allowing temporary board members to serve does not allow for renewal. The use of terms in the plural is because the entire regulation refers to judges in the plural, so it's each of their terms. By contrast, as we pointed out, the regulation at 8 CFR 1003.10EI and 2, 2 little i, expressly allow that immigration judges, temporary immigration judges—the language is similar, except that it clearly states renewable terms, not to exceed six months. That renewal, a renewable language, is missing in the regulation allowing for the temporary appointment of Board of Appeals judges. So I think that that's significant, and I don't think that it was lawful for the Attorney General to renew these terms beyond the six months because the regulation doesn't allow it. Additionally, going back over the history of the regulation, the 1988 version for temporary appointments did state for whatever time the director deems necessary, and that is at 53 Federal Register 15659-01. That regulation was amended in 1998 to add the six-month limitation, and there was another amendment in 2006 that expanded the ability to designate senior EOIR attorneys and not just judges. But at that same time, again, the regulation pertaining to immigration judges on a temporary basis states that those terms are renewable, and the one— Mr. Thoman, had you filed a reply brief, okay—and I'm not focused on that because you're here—we can ask you the question. Yes, Your Honor. Would you have been able to identify courts around the country that have agreed with you? Your Honor, this issue, as far as I'm aware, only began emerging in January or February of this year. I am aware of two other cases pending, one in the Fourth Circuit, that is case number 21-1171, and one in the Eighth Circuit, 21-1396. I've spoken to counsel, to Petitioner's Counsel in both those cases, and my understanding is that they're set for oral argument. But the issue is, as far as I've been able to research, is something that just started coming up, and I don't think that it has been litigated in other circuits. So that would have been our response to that argument. We do stand by that argument. We think that the appointments, even though they were labeled reappointments, the memoranda clearly states that they refer to the renewal of the terms. Can I take you to the first issue that was raised? Yes, Your Honor. Would you mind? No, of course not, Your Honor. Okay. So the question I have is, I totally understand why you're pointing to Estrada-Martinez, you know, as kind of trying to anchor that on the issue of whether the Board applied the proper standard of review. Can you set aside the facts of this case entirely for a second? I'm sorry, Your Honor, are you referring to the second argument, the substantial? Maybe it is the second argument. The whole de novo versus, okay. Yes. Thank you, Your Honor. Yeah. Well, in this case, the immigration judge considered testimony that was deemed credible. It considered expert. Right. Here's the question I have. Set aside the facts of this case. Okay. Just forget them for a minute for purposes of this hypothetical question. Okay. What factors or principles should a court apply in trying to determine when reviewing here, a Board decision, whether the Board applied de novo review or clear error review? So in other words, if we had to write an opinion and articulate a framework, what do you propose that we say? Thank you, Your Honor. That's an interesting question. I think that when applying the clear error standard appropriately, the Board should begin, it should identify the errors that are clearly erroneous, the ones that no reasonable fact finder could have agreed with. And then at that point, they can make additional determinations. And obviously, there will be some overlap because as the reviewing court is doing that, as the agency on appeal is going over what are the clear errors here, it necessarily is going to apply on its own. That seems to have been met here, right? Because the Board does articulate the definition of clear error, that it's an error that leaves you with a definite and firm conviction an error has been made. It does, Your Honor. And then they canvass some of the evidence and just for purposes of synthesis, what I read the Board to say is that they just, they unfortunately found Mr. Brito's position speculative. That's what it kind of distilled down to. Your Honor, they did refer to it being speculative, citing Barry v. Barr and Arianna Arias v. Sessions. And isn't speculation in other contexts clearly a basis for evaluating whether an error, a factual error is clear or not? It would be, Your Honor, except that the areas in which the Board found that the testimony was speculative are things such as, for example, the expert witness's prediction of what would occur. So this is somebody that was qualified by the court that knows what happens to individuals in that situation. So anytime an expert is going to talk about what would happen, that involves some degree of speculation. But also in this case, as we pointed out or as the petitioner pointed out below, the immigration judge did not just rely on the expert and testimony and the State Department country conditions report. There were about 300 pages of supporting documents that were submitted to the IJ. And one of the other areas where the judge's decision was determined to be speculative was in the area of police acquiescence. And that is an area where definitely that additional... I'm not sure that I would consider that to be... I'm not sure that the Board said there was speculative, did they? I thought they just said it was totally without merit. Your Honor may be correct. I may be... There's just no evidence. No, I understand. He approached the police a year before the boat showed up and said the mob might be coming and we need some help. And the police didn't do anything. And I think the immigration judge said that's enough. Your Honor, I think that the immigration judge additionally referred to those 300 pages of additional articles and statements, as well as the expert testimony's explanation of police infiltration, particularly when he was discussing how the cartel would become aware of his return. And additionally, petitioner's affidavit in support of his asylum application did also mention that at one point he witnessed a cartel shootout and the police never came to do anything. So, when everything is taken together, the IJ's determination that the evidence showed that the police would not act in this case, I think was sufficiently supported by the record. And if the Court has no questions, I'd like to reserve time for... Yeah, we'll give you a minute for rebuttal. No problem. Thank you. Thank you, Your Honor. Mr. Robbins, good morning.  Yes, I can, Your Honor. Can you hear me? Yes, I can. Yes, go right ahead. May it please the Court. My name is Jonathan Robbins, and I'm here on behalf of Merrick Garland, the Attorney General. Good morning to all of you. The two primary issues in this case are whether the Board properly denied the petitioner's application for protection under the regulations which implement the Convention Against Torture, and the second argument regarding the reappointment of the temporary Board members. Since petitioner started with the Board members, I'll start there as well. Much of the argument that he's raised today is an argument that he has not raised in his briefing. He appears to be challenging the Board's authority to appoint temporary Board members or to reappoint them, but that's not an argument that he raised in his brief. In his briefing, what he argued was that they were not properly appointed, and so the only response that the government provided was the proof showing that they were actually that they were therefore properly acting as temporary Board members. Now the petitioner has pointed out that there are other arguments, which in other cases and other circuits, I think in the Fourth, the Fifth, and the Sixth to be precise, which I believe are all currently pending, in which other petitioners have made similar arguments to the one that petitioner is now making for the first time today about sort of larger challenges to the regulation itself. But the government would submit the petitioner has waived those arguments for not raising them in his opening brief and also not raising them in any reply brief. If the court wants me to get into the answers to those arguments, I can, and I would point out initially that the regulation in question is not one that creates any substantive right, so I don't even think petitioner has any standing to challenge the regulation here. This is a regulation that wasn't passed pursuant to notice and comment. This is a regulation that deals with the Board's authority for its own organization, so I would argue that petitioner doesn't even have standing. But even if you look at the actual regulation itself, the regulation refers to terms of employment, the key word there being terms, plural. So I would argue that even under the plain regulation, the Board is permitted to reappoint people once their terms have been expired. But again, none of this was raised in petitioner's opening brief, so the government hasn't really had a fair opportunity to flesh this out in briefing. So if the court were going to assess that particular issue, we would ask that we at least be given an opportunity to supplement our briefing with the arguments that would respond to these arguments which have been raised for the first time today. Now with respect to what I think is probably the more primary issue, which is the agency's denial of cat protection, I want to address your Honor's question that you asked my colleague, which is how exactly does the court go about assessing whether the Board properly applied the Clear Error Standard of Review? I would refer your Honors to two out-of-circuit decisions, which of course, while not binding on this Court, I think have spoken to and given an answer to the question that you were asking. Both of them are cited in our briefing. One of them is Abdi Omar v. Barr out of the Eighth Circuit, and the other one is Wu Lin v. Lynch out of the Second Circuit. Now both of those courts acknowledge that sort of as a general matter, when the Court is assessing whether the Board properly applied the Standard of Review, that's always reviewed de novo. That's a legal question. But they've both gone on to explain that when the Board applies the Clear Error Standard of Review, the Court is not supposed to review the immigration judge's decision de novo. In other words, you're not looking at the immigration judge's decision to see if he or she was clearly erroneous. Instead, what the Court is supposed to do is look at the Board's decision to determine whether the Board provided sufficient justification for its determination. And what does that entail? Well, the courts have explained, that means the Board has to adequately explain why it rejected the immigration judge's findings, and it has to identify reasons grounded in the record that are sufficient to satisfy a reasonable mind that an error has been made. And so while those cases are out of circuit, I do think they appropriately address what the Court is supposed to do in assessing whether the Clear Error Standard was properly applied. Isn't that formulation in counsel, as you just stated it now, seems to conflate the substantial evidence test that we would be applying in another circumstance with our de novo review of whether the Board applied the correct standard here? And isn't our inquiry here about whether the Board impermissibly engaged in a re-weighing of the evidence, looked at the facts, and just came up with a different conclusion than the IJ? Well, Your Honor, I would point Your Honor to this Court's decision in Rosiles Camarena, in which this Court explained that the Board is allowed to revisit facts, including the likelihood of future events, so long as it does so under the Clearly Erroneous Standard. So it is allowed to reassess that if it determines that an error has been made. And very often, these cases are close because immigration judges as fact-finders do have a certain amount of leeway, right? They can make reasonable inferences from the evidence when the evidence doesn't directly speak to something, right? Not all evidence is direct. Sometimes you have circumstantial evidence, and the fact-finders, including the immigration judges, do in these situations have some leeway to make reasonable inferences. But there's a big difference between making reasonable inferences off the evidence and making inferences which are so speculative that they completely outpace the evidence. I think the Board in this case did a pretty sound job of explaining why it thought the immigration judge's decision really fell into that latter category. When you take a look at what Petitioner actually testified to in this case, he claimed that he was a fisherman of no particular interest to anybody, not a person of high-profile interest or not a person that was particularly visible. He claims that on one day in one incident eight years ago, he had an encounter with the cartel in which he ultimately ended up fleeing. And he claims that he's not going to be able to go to anywhere in Mexico because the cartel is going to send assassins after him and target him through it no matter where he goes in Mexico. And the immigration judge agreed with this largely because of the expert testimony that was provided. But when you look at the expert testimony in this case, that's not really what the expert said. What the expert said is that an individual is that the cartel had the capacity to send assassins when they really wanted to get somebody. So for example, if there's a witness that they want to go after or somebody that's high-profile, the examples that the expert actually gave of people who had faced problems were a mayor, a political radio commentator. So in other words, people that were highly visible, people that had political positions, people that you would reasonably expect that the cartel might seek to target. But Petitioner has never claimed to be anybody in that type of situation. I think the board was reasonable in pointing out and saying, look, the immigration judges leap in logic here, that because this has happened to other high-profile individuals, that this large organization is going to expend resources trying to hunt down somebody that it had one contact with eight years ago, who's not a person of any high visibility or any high-profile situation. I think the board was reasonable in explaining that's too speculative of an inference based on the evidence that's been presented. And for that reason, we don't think that inference is reasonable. How do you distinguish between that example being too speculative versus the BIA choosing different facts to highlight? So for example, in the retelling that you just did, you omitted the fact that the I.J. found relevant that the cartel was searching for Mr. Cuenca Brito by name. They specifically were searching for him. She found also, she was there, could observe the expert witness, found the expert witness credible. So where are you drawing the line? Well, respectfully, Your Honor, I would dispute the notion that the facts demonstrate that the cartel was searching for him by name. What the facts demonstrate, and this is actually the same mistake, I think, that the immigration judge made. That's not what Petitioner testified to. In fact, if you look at page 193, what he specifically testified to is that when he was detained, the people who were detaining him did not know who I was. Now, what he said was that he heard his name referenced on the radio, along with his sister's names, because at the time, the cartel was apparently ransacking all of these different houses in the village. And so what he said was he heard his name referenced on the radio. That's what I'm talking about, yes. Yes. So, but understand, the I.J. was conflating two different events, right? There's this situation where the cartel is ransacking homes, and it's not surprising that they might find out the name of the person's home they were ransacking. Petitioner said it wasn't just his name. He said he also heard his sister's reference. So the notion that the cartel was seeking him out by name is not supported by the record. What it seems apparent from his testimony is, is that they discovered his name while they were ransacking his house. But he also stated that the individuals who actually detained him, which again, were individuals who swept him up as part of a random sweep, which is what he testified to, he indicated that they could not identify him by name, and he specifically testified to that. And the board clarified that when it, when it found error in the immigration judge's decision and said, look, the immigration judge conflated those two things. This is what he actually testified to. So that's another example of the board pointing out the error in, in the immigration judge's decision. And again, getting back to what this court is supposed to look at, did the board properly explain why it rejected the I.J.'s finding? I think the board did a good job of that here. And did it identify reasons in the record which supported its conclusion for finding the error? That's exactly what the board did here. So under the standard by which this court should review the board's decision, I think that the court should leave the agency's decision undisturbed. Thank you, Mr. Robbins. Mr. Toman, rebuttal. Very briefly, and thank you for the chance to respond. Regarding the temporary appointment issue, I just want to point out once again, the terms language and plural, as I mentioned, is part of a sentence where everything is plural. So that shouldn't be given weight. Regarding the other issue, the more substantive part of the respondent's argument, the out-of-circuit cases that they cite, one important distinction, and it does apply to the standard being applied here, is those cases involve decisions where the board affirmed the immigration judge's decision. This is the opposite. In this case, the immigration judge granted relief and the board reversed it. So the question is, did the board do that correctly, which requires the court to look at the immigration judge's decision as well? And finally, regarding the facts and what happened here, we're talking about a situation, and I'm glad the name issue came up because that is one, that's the first thing that the board says, this is clearly erroneous. What happened here is a boat with 30 armed men arrives on shore, they come to ground, they hold a petitioner and some other fishermen at gunpoint, and while this is happening, they're on walkie-talkies, they're talking to other people, his name is heard. I don't see how the board could say that no reasonable fact finder could reach the conclusion that this shows that they were looking for him. And that's just one very important example that I hope this court will consider. I see that my time has expired, if there's no other questions. Very well. Mr. Tomon, thank you. Mr. Robbins, thanks to you, the case is taken under advisement.